# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **In re:** | |
| **MICHAEL JOSEPH ROBERTS, SR.,** (Debtor) | **Bankruptcy Case No. 22-10521-JGR** **Chapter 7** |
| **MICHAEL JOSEPH ROBERTS, SR.** | |
| **Appellant** | |
| **v.** | **U.S. District Court** **Case No. 22-CV-2699 REB** |
| **PDC, LLC;** **TIMOTHY FLAHERTY;** **TIMOTHY KNEEN;** **RIVIERA COUNTRY CLUB, S. DE. R.L. C.V.S,** Appellees. | |

## REPLY BRIEF

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with U.S.C.S. 8015(a)(7)(B). It contains 6,078 words.


By:   */s/ Robert C. Podoll, Esq.*

## TABLE OF CONTENTS

I.    Introduction ...................................................................................................1

II.   A Tale of Two Briefs .......................................................................................2

III.  Argument.........................................................................................................6

    A.   The Bankruptcy Court Abused its Discretion ...........................................6

        1.   A Court Abuses its Discretion When it Improperly
           Perceives the Evidence ........................................................................6

        2.   The Bankruptcy Court Made Clearly Erroneous Findings of
           Fact.......................................................................................................7

           a.   Timing of the Filing ....................................................................7

           b.   Obtaining Release from Incarceration ......................................10

           c.   Avoiding Foreclosure.................................................................12

           d.   Fraud and Breach of Fiduciary Duties ......................................13

           e.   The Promoters are not the largest unsecured creditor...............17

           f.   In Summary ................................................................................19

    B.   The Questionable Orders from the Denver Court...................................19

    C.   The Petition was Filed for Valid Bankruptcy Purposes.........................22

    D.   The Bankruptcy Court Failed to Consider Unusual
        Circumstances ........................................................................................23

IV.   Conclusion.....................................................................................................27

# TABLE OF AUTHORITIES

## Cases

*Bator v. Mines Development, Inc.*,
   513 P.2d 220 (1973) .................................................................................. 15

*Bernhardt v. Commodity Option Co.*,
   528 P.2d 919 (Colo. 1974) ......................................................................... 13

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990) ...................... 7

*Crisman v. Dorsey*,
   21 P. 920 (Colo. 1889) .............................................................................. 13

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280, 125 S. Ct. 1517 (2005) ..................................................... 22

*In re Dovetail, Inc.*,
   2008 Bankr. LEXIS 3866 (Bankr.N.D. Ill. 2008) ......................... 25, 27

*In re Jet Sales West LLC*,
   2021 Bankr. LEXIS 3448 ........................................................................ 21

*In re Kearney*,
   625 B.R. 83 n. 72 (B.A.P. 10th Cir. 2021) .............................................. 6

*Macco Props., Inc. v. Deeba (In re Macco Props.)*,
   2011 Bankr. LEXIS 5755 (W.D.OK) ...................................................... 25

*NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*,
   384 F.3d 108 (10th Cir. 2004) ............................................................ 7, 23

*Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*,
   200 F.3d 154 (3d Cir. 1999) ...................................................................... 7

# I.  INTRODUCTION

In the failed Mexican development Appellees (referred to herein as "Promoters") raised $18 million, promising to build beach front villas south of Playa Del Carmen in Mexico.  Promoters had none of the experience, qualifications or training to develop property anywhere.

Promoters failed to investigate the entitlements of the property they purchased in 2008 but wasted millions on architects, engineers, and consultants, all for a project which could not be built.

In 2012 having learned little from the failed attempt to build villas, Promoters borrowed an additional $12 million and purchased two adjacent parcels (referred to by the parties as the "Mustapha Parcels").

In 2014, the project ran out of money. Promoters then owed more than $20 million to the lenders, including more than $7 million to the Debtor.

Promoters in their Answer Brief call the description of their project failures a "fanciful rendition" but they don't deny any of the allegations.

They don't deny raising and squandering $30 million on a project they were not qualified to attempt. They don't deny that the project was a complete failure and they failed to sell the properties over two years leading to an imminent default in the Hotusa settlement.

They don't deny that if they had been able to sell the Mustapha Parcels, only a few million dollars would have been available (after closing costs and payment of the Hotusa lien) to pay a small fraction of the project debt. They don't deny the months of correspondence acknowledging that the only way to pay Hotusa was to sell the properties.

They don't deny that they knew that the Debtor was attempting to arrange to develop the Mustapha Parcels as shown by contemporaneous e-mails they sent.

They don't deny that the Debtor told them on December 13 that he was personally going to pay the Hotusa lien, again as shown by contemporaneous e-mails they sent.

Still, armed with their false allegations, Promoters allege that Roberts defrauded the investors and that the Bankruptcy filing was a mere continuation of Roberts' misuse of the Courts to perpetrate his fraud. As in the Bankruptcy Court, Promoters don't show this Court any facts showing that Debtor's Petition was filed in bad faith. They merely quote the erroneous orders of the Denver Court.

## II. A TALE OF TWO BRIEFS

The Opening Brief and the Answer Brief tell two sides of the same story.

The Opening Brief alleged that the preliminary injunction was heard prior to any meaningful discovery which enabled the Promoters to make false allegations of an

agreement with the Debtor to purchase the Hotusa lien for RCC. Opening Brief at p. 9. The Answer Brief referenced the Preliminary Injunction as proof that the Debtor acted in secret and violated an agreement to discharge the Hotusa lien.

Discovery would later show that the Debtor had not acted in secret and there was no agreement to pay the Hotusa lien for RCC. The Promoters were aware that the Debtor was attempting to put together a development deal himself. *See* 12/2/16 E-mail from the Promoters. ROA Volume 1, Part 3, p. 1131. There was no agreement that the Debtor would pay the Hotusa lien for RCC. *See* e-mail from Kneen the very next day acknowledging that the Debtor would acquire the lien personally. ROA Vol. I, part 3, p. 1140.

Similarly, the Opening Brief alleged that after the injunction issued, Promoters continued their litigation in the Courts of Mexico to invalidate the assignment of the Hotusa lien by filing an appellate brief in federal court in Mexico. When Roberts' Mexican counsel filed a brief in response, Promoters moved for a contempt citation falsely alleging that Debtor was continuing his foreclosure in Mexico. Opening Brief at p. 10.

The Answer Brief did not deny the false allegation but cited to the contempt Order to contend that the Debtor acted fraudulently in ignoring the injunction. To the

contrary, the Debtor has never completed the foreclosure in Mexico, an allegation that the Promoters do not deny.

The Opening Brief alleged that the Debtor's claims and defenses were improperly struck based upon a false allegation that the Debtor had not complied with discovery obligations. The Answer Brief did not deny the false allegation but held out the order of sanctions to contend that the Debtor acted in bad faith.

The Opening Brief alleged that the Denver Court held a portion of the bifurcated trial on the issue of corporate governance. The Debtor was precluded from attending by the threat of arrest. Only the Promoters were able to attend and tell their side of the story, which was again replete with allegations of fraud and deceit. Opening Brief at p. 11.

The Answer Brief did not deny that the trial was convened on the issue of corporate governance or that only the Promoters were in attendance. The Answer Brief extolled the resulting findings and conclusions which were entered in favor of the Promoters.

The Opening Brief alleged that the assets of the Debtor were improperly frozen by the Denver Court based upon the false allegation that the Debtor was moving his family to Poland. Opening Brief at p. 12. The Answer Brief did not deny the false allegation but held out the resulting injunction as proof of the bad faith of the Debtor.

The Answer Brief concludes its recitation of the Denver Court Orders with its main supposition, bereft of any supporting evidence. The Answer Brief alleges that the Bankruptcy Petition was nothing more than a continuation of Debtor's effort to cheat his fellow investors and exploit the court system to achieve his corrupt objectives.

How full of irony is this baseless charge?

Promoters lost the $30 million invested in and loaned for the project. They commenced a development in a foreign country without any knowledge or experience. Except for raising money, they failed at every task they undertook.

In December 2016 they were on the verge of losing the Mustapha Parcels after acknowledging for months that RCC wasn't able to pay the lien. ROA Volume 1, Part 3, pp. 1147–1149. Yet, when the Debtor obtained an assignment of the lien, promoters accused the Debtor of fraud and deceit.

The truth is that both before and after the assignment of the lien, it could have been paid by RCC. However, RCC could not and did not pay the lien because it had no money and its properties were being liquidated. ROA Volume 1, Part 3, p. 1147. Promoters contend that the Debtor cheated the project investors and exploited the Court system. In truth, it was the Promoters who lost the investors' money, falsely blamed the Debtor for their failures, and exploited the Court system with a persistent barrage of false allegations.

Lost in the Promoters' description of the orders of the Denver Court were the issues germane to this appeal.

Did the Bankruptcy Court misperceive the evidence in evaluating the good or bad faith of the Debtor in filing the Petition?

Did the Debtor file his Petition for the valid Bankruptcy purposes of maintaining his business as a going concern and leveling the playing field among his creditors?

Did the Bankruptcy Court fail to consider the unusual circumstances of this case: the impediments to the operation of Debtor's business from his wrongful incarceration; the effect on a reorganization of completing the foreclosure of the Mustapha Parcels, worth $9 million in 2016; and the set off the Debtor has against the claims of Promoters from the loans made by the Debtor for the project?

### III.   ARGUMENT

**A. The Bankruptcy Court Abused its Discretion**

#### 1. A Court Abuses its Discretion When it Improperly Perceives the Evidence

Again, the Opening Brief and the Answer Brief tell two sides of the same story. The Answer Brief argues that the determination of bad faith is committed to the sound discretion of the Bankruptcy Court and its determination will not be reversed absent an abuse of discretion. The Answer Brief cites *In re Kearney*, 625 B.R. 83, 93 n. 72 (B.A.P. 10th Cir. 2021).

The Opening Brief cites *Integrated Telecom* for the proposition that the standard on appeal is abuse of discretion: *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (10th Cir. 2004) . The Opening Brief elaborated:

> An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.

*Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 159 (3d Cir. 1999). An abuse of discretion, is shown if the bankruptcy court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990).

The Promoters argue that deference must be given to the Bankruptcy Court's findings because of its opportunity to view witnesses and assess credibility. However, the Promoters introduced no testimony at the hearing. They merely relied upon the Orders of the Denver Court. There was no opportunity to view witnesses or assess credibility.

## 2. The Bankruptcy Court Made Clearly Erroneous Findings of Fact

### a. Timing of the Filing

The most significant factor in the Bankruptcy Court's analysis involved the

timing of the Bankruptcy Petition. The Court wrote:

> (5) Roberts filed this Chapter 11 case on the eve of the damages hearing that had been continued three times. He had already lost on the merits and was facing multiple millions of dollars of judgments against him. These judgments were eventually liquidated in excess of $21 million and will grow even larger.

ROA Volume 1, Part 3, p. 1264.

The Answer Brief repeats these allegations and claims that the timing of the filing shows an intent to impede, delay, forum shop or obtain a tactical advantage.

Both the Court and the Answer Brief ignore the undisputed facts in the record. The week before the scheduled hearing the Debtor, who was wrongly incarcerated at the time, contracted COVID-19. ROA Vol. V, Tr (6/29/22), 103:1-4. The Debtor was confined to isolation, unable to access the Court and his attorneys. *Id.* Faced with the prospect of trying to defend against the specious damage claims from a jail cell without being able to prepare with his counsel, the Debtor elected to file in the Bankruptcy Court.

The Bankruptcy Court and the Promoters imply that the Debtor filed his Petition to stop the hearing. The truth is exactly the opposite. The Debtor and his counsel were anxious to attend the hearing and show the Court that RCC had no equity in the Mustapha Parcels, having project debt of twice the value of its three properties.

The Bankruptcy Court also found that the damages hearing had been continued on three previous occasions, and inferred that the debtor was attempting to delay the creditors. There was no evidence of such delays presented at trial. The Court merely accepted the argument of the Promoters that there had been prior delays. None of the prior continuances evidenced an intent to delay.

The initial continuance followed the entry of appearance of the undersigned counsel. Counsel for the Debtor filed motions to vacate the sanction order, to traverse the Writ of Attachment, to dismiss the claims of PdC for lack of jurisdiction, to vacate the finding of liability for violations of the due process rights of the Debtor, and for judgment on the pleadings because the subject matter of the claims had been litigated in the Courts of Mexico. *See, e.g.*, ROA Vol. 1, Part 3, pp. 489-514.

The Court decided to consider these motions before moving forward with the damage hearing. The first continuance was not the result of delaying the claims. It was an attempt to litigate the claims properly and fairly. Eventually the Court declined to do so.

The second continuance was a four-month delay requested by Promoters' counsel for health reasons. The Debtor opposed. The Court granted Promoters' motion to continue.

The third continuance was requested by the Debtor who had been exposed to COVID-19 while incarcerated. All parties stipulated to the continuance. The third continuance was not interposed for delay.

The timing of the Bankruptcy Petition does not show that it was filed in bad faith.

### b. Obtaining Release from Incarceration

The Court mis-perceived the evidence finding that the Debtor filed his Petition in Bankruptcy to secure his release from jail without purging his contempt. The Court wrote:

> Roberts filed for bankruptcy while in jail for civil contempt for disobeying Denver District Court orders and after filing two federal habeas corpus petitions. One was denied and another was pending when he filed his bankruptcy petition. Doc 104 at 9 n4. His bankruptcy petition secured his prompt release from jail without purging his contempt. …

ROA Volume 1, Part 3, p. 1248.

The Promoters introduced no testimony at the hearing. There was no testimony presented that the Debtor filed his Petition to secure his release from jail. None of the Orders from the Denver Court found that the Debtor filed his Petition to secure his release from jail.  The Bankruptcy Court merely inferred that Debtor's release was a purpose of the filing.

The inference of the Bankruptcy Court was incorrect. The Debtor's incarceration was a part of the contempt orders entered to enforce the preliminary injunction. As soon as the damage hearing completed, all pre-trial orders including the preliminary injunction and the orders to enforce it would be moot. The Debtor didn't file his bankruptcy petition to end his incarceration. It would have ended anyway at the completion of the damage hearing.

On March 25, 2022, the Bankruptcy Court granted relief from stay to liquidate the claim of the creditors. The Denver Court set an immediate damage hearing, which was conducted on April 20 and 22. The Debtor's contempt was purged when the hearing concluded.

The Promoters sought damages in their claims and thereby waived any claim to rescind the assignment of the Hotusa lien to the Debtor. At the hearing on damages in April 2022, no permanent injunction was sought and no transfer of the Hotusa lien to the Promoters was sought or ordered. The preliminary injunction expired and with it the contempt orders to enforce the injunction.

As the Bankruptcy Court noted, it entered a comfort order permitting the Denver Court to continue to enforce its contempt orders. The Debtor was not incarcerated after the entry of the comfort order. He has not been incarcerated thereafter.

The contempt of the Debtor was purged by the completion of the trial. The inference of the Bankruptcy Court that the Petition was filed to secure the Debtor's release was improperly drawn.

### c.  Avoiding Foreclosure

The Bankruptcy Court mis-perceived the evidence, finding that the Debtor's property was the subject of a foreclosure. The Court wrote:

> Although not posted for foreclosure, Roberts' property has been attached to satisfy his creditors-the same function as a foreclosure and Roberts has been unsuccessful in defending against the attachment in state court.

ROA Volume 1, Part 3, p. 1248.

Similarly, the Promoters contended in their Answer Brief that they have an attachment lien. However, no evidence of an attachment lien was presented. Instead, the Promoters introduced the Order of the Denver Court denying the traverse of the Writ of Attachment. However, granting the Creditor's motion for the Writ of Attachment did not create a lien.

An attachment lien is created by the levy and execution of the Writ by the Sheriff. It is not created by the mere issuance of the Writ:

> It is well settled that no lien is created by the issuance of the attachment writ; that such lien can only be created by a valid levy. It is not the writ, but the levy of the writ by the actual seizure of the property, which constitutes the attachment.

*Crisman v. Dorsey*, 21 P. 920, 924 (Colo. 1889). Execution of the writ serves as a lien on specified property. *Bernhardt v. Commodity Option Co.*, 528 P.2d 919, 921 (Colo. 1974).

In this case, no evidence was presented that a Writ ever issued. No Court Order was presented in which the Denver Court commanded the Sheriff to seize property of the Debtor. No evidence was introduced that the Sheriff acted on the order granting the Petition for a Writ. No evidence of a levy was presented and no evidence of execution on any of the property of the Debtor was presented. Thus, no attachment lien was demonstrated.

The Bankruptcy Court mis-perceived the evidence that the Petition was filed to avoid an imminent foreclosure.

### d.  Fraud and Breach of Fiduciary Duties

The Bankruptcy Court mis-perceived the evidence that the Debtor committed fraud. The Court wrote:

> Pre-petition, Roberts committed fraud and breached his fiduciary duties; lied under oath multiple times; and disobeyed direct orders of the Denver District Court.

ROA Volume 1, Part 3, p. 1247.

No testimony was introduced that the Debtor committed fraud. Rather, the Promoters submitted the Order of the Denver Court finding the Debtor had usurped the

corporate opportunity of RCC, and the Order finding the Debtor had damaged the shareholders of RCC in the amount of the unencumbered value of the Mustapha Parcels, notwithstanding the lack of equity RCC had in the property.

The Bankruptcy Court found that these orders established that the Debtor had breached fiduciary duties and committed fraud. Upon closer inspection, however, it is apparent that no fiduciary duties were breached and no fraud was committed.

The Order finding that the Debtor breached fiduciary duties concluded that the Debtor usurped the corporate opportunity of RCC to repay the debt to Hotusa and discharge its lien. This Order was entered in a bifurcated trial on the issue of corporate governance at which the Debtor was prevented from attending.

If the trial had been properly convened with notice that liability would be tried, and if the Debtor had been able to attend, evidence would have been presented that the Debtor did not usurp the corporate opportunity of RCC. The assignment of the Hotusa lien to the Debtor did not prevent RCC from paying it. The debt and lien still existed after its assignment to the Debtor and RCC was still liable and responsible for its payment. The actions of the Debtor in obtaining the assignment did not prevent RCC from repaying the debt and discharging the lien.

RCC was unable to pay the Hotusa debt as demonstrated in the contemporaneous communications from the Promoters. ROA Volume 1, Part 3, p. 1131. RCC had

attempted to sell its properties for the prior two years but could not. The Promoters recognized for months at the end of 2016 that RCC could not acquire the funds to repay Hotusa. ROA Vol. I, part 3, pp. 1147-1149. If the properties could not be sold, the Mustapha Parcels would be taken by foreclosure. *Id.* An insider does not usurp a corporate opportunity if the corporation cannot or will not pursue it. *Bator v. Mines Development, Inc.*, 513 P.2d 220 (1973).

Here, RCC could not pursue the payment of the Hotusa lien because it did not have the money to pay it. RCC could not raise the money to pay it because the contemporaneous correspondence showed that RCC had no equity in the property and was liquidating its assets. ROA Vol. I, part 3, pp. 1131-1132. Its investors and lenders refused to pay in another $5.5 million to retire the Hotusa lien just to sell the already over-encumbered property. *Id.*

In the Bankruptcy Court, no evidence was presented as to how or why RCC would have repaid Hotusa after December 16, 2016. No evidence was presented that the Debtor acted in bad faith by obtaining a transfer of the Hotusa lien when RCC couldn't discharge the debt, and no evidence was presented the assignment prevented RCC from paying the Hotusa lien.

The Bankruptcy Court inferred bad faith from the erroneous finding of the Denver Court in a trial limited to corporate governance which the Debtor was prevented from attending. The Bankruptcy Court's inference was erroneous.

The Bankruptcy Court also found that the Debtor committed fraud. No proof of fraud was presented to the Court. No allegations of fraud were proved in the Denver Court. The sole finding of liability was the erroneous finding of breach of fiduciary duty.

However, the Promoters cited to remarks made by the Denver Court in its Order on the damage hearing. The Denver Court stated that the Debtor's conduct was fraudulent and attended by circumstances of fraud in awarding punitive damages.

The fraudulent conduct referred to by the Denver Court was the undocumented story of the Promoters that the Debtor had agreed to pay the Hotusa debt for RCC. However, that story is contradicted by the E-mail of Promoter Kneen the next day acknowledging that the debtor would personally acquire the Hotusa lien and proposing that the Debtor contract with RCC thereafter. ROA Vol. I, part 3, pp. 1140-1142. If the Debtor had agreed to pay the lien for RCC, there would have been no reason the next day to propose that the Debtor would acquire the lien personally.

No evidence of fraud was presented to the Bankruptcy Court. No judgment in fraud was entered by the Denver Court. The finding of fraudulent conduct by the

Denver Court is refuted by the contemporaneous correspondence of the parties and should not have been relied upon by the Bankruptcy Court to show that the Debtor acted in bad faith.

### e.  The Promoters are not the largest unsecured creditor

The Court mis-perceived the evidence and found that the claim of the Promoters is much greater than the other unsecured creditors. The Court wrote:

> Although the more than $21 million in judgments owed to the PdC Creditors is secured by a pre-judgment writ of attachment, the writ of attachment only issued because of Roberts' improper conduct. *See* Denver District Court Order Re: July 23, 2021 Hearing on Traverse of August 20, 2020 Writ of Attachment (October 6, 2021). But for Roberts' improper prepetition conduct, the PdC creditors would be Roberts' only significant unsecured creditor. …

ROA Vol 1, Part 3, Page 1277.

No evidence of amounts actually owing to the Promoters was introduced at the trial. The Bankruptcy Court was provided the Order of the Denver Court awarding $21 million in damages to PdC, Kneen and Flaherty. The Order of the Denver Court ignored RCC's debt.

RCC had no equity in its properties. It had debt in excess of $30 million, and properties worth less than $15 million. RCC suffered no damages from the loss of the Mustapha Parcels.

PdC, Kneen and Flaherty have no claim against the Debtor. The claim for usurping the corporate opportunity belonged to RCC, not to its shareholders or remote owners.

RCC litigated its claims arising from the assignment of the Hotusa lien in Mexico as required by Mexican law. The Debtor prevailed. RCC can bring no claim against the Debtor in the Courts of the United States which lack subject matter jurisdiction of claims of a Mexican National dealing with liens on Mexican Property. After losing its lawsuits in Mexico, any claim brought in the Courts of the United States by RCC and its shareholders would be barred by res judicata.[1]

Further, any claim of RCC against the Debtor would be subject to set off for the loans made by Debtor for the project. Those loans with interest now would exceed $20 million.

The Bankruptcy Court failed to consider that PdC, Kneen and Flaherty as shareholders and remote owners of RCC have no claim against the Debtor, that RCC no longer has claims against the Debtor, that RCC suffered no damages and that any damages which could be claimed by RCC would be subject to significant setoff.[2]

---

[1] Debtor has filed an objection to the claim of RCC which has not yet been ruled on.
[2] Debtor has filed an objection to the claims of PdC, Kneen and Flaherty which have not yet been ruled on.

The Bankruptcy Court misperceived the evidence in concluding that the claims of the shareholders and remote owners of RCC predominate the claims in the estate.

**f.  In Summary**

The Bankruptcy Court mis-perceived the evidence:

The Debtor's pre-petition conduct was not fraudulent and the finding of usurping the corporate opportunity of RCC at a trial on corporate governance that the Debtor was prevented from attending is subject to significant concern.

There was no lien on the Debtor's assets in favor of PdC;

The timing of the Petition was meant to enable the Petitioner to attend and meaningfully participate in the damage hearing, not evade it;

The Petition was not filed to end Debtor's incarceration. The order of contempt would have ended after the damage hearing with the expiration of the preliminary injunction it was ordered to enforce.

Considering the lack of equity in the Mustapha Parcels and considering the setoff the Debtor has against RCC for loans made by the Debtor for the project, the claims of the shareholders and remote owners of RCC do not predominate the estate.

A Chapter 11 Plan of Reorganization may be feasible and the Debtor should be afforded the opportunity to propose a workable plan.

**B.  The Questionable Orders from the Denver Court**

The Orders of the Denver Court raise significant concern. [3]

The Denver Court violated the Debtor's right to due process by finding liability in a portion of the trial convened on the issue of corporate governance.

The Denver Court violated the Debtor's right to due process by finding liability in a portion of the trial at which the Debtor was prevented from attending by threat of arrest.

The Denver Court violated the Debtor's right to due process by ordering the Debtor to transfer his property to the Promoters in advance of trial and without any conceivable claim to the property by the Promoters.

The Denver Court violated the Debtor's right to due process by imprisoning the debtor and fining him $1,000 per day based upon the false allegation that the Debtor was continuing foreclosure proceedings in Mexico.

The Denver Court violated the Debtor's right to due process by freezing his assets in excess of its jurisdiction.

The Denver Court violated the Debtor's right to due process by striking his claims and defenses based upon false allegations of that the Debtor had produced only

---

[3] Although the liability and damage orders of the Denver Court are largely suspect, the Petition was not filed to relitigate those orders. The Orders will be appealed in due course. The Orders are described here to show that the Bankruptcy Court was wrong to ascribe bad faith to the Debtor based upon the Orders.

14 documents in the Denver action, when the Promoters had received approximately 1,100 documents containing more than 9,500 pages.

The Denver Court ordered that the Debtor was liable to the shareholders and remote owners of RCC, who had no direct claim against the Debtor.

The Denver Court acted beyond its jurisdiction in attempting to change the results of years of litigation in Mexico.

The Denver Court acted beyond its jurisdiction by entertaining the claims of PdC, Kneen and Flaherty relating to the assignment of a lien on Mexican real property to the Debtor.

The Denver Court erroneously calculated damages as the unencumbered value of the RCC properties when RCC had no equity in the properties and lost nothing when it failed to repay the Hotusa lien.

The Denver Court erroneously calculated damages without considering the setoff for the loans the Debtor made to RCC for the project.

Where orders are subject to significant concern, the Debtor's use of the benefits of the Bankruptcy Court do not show bad faith. "That is after all what they are there for." *See In re Jet Sales West LLC*, 2021 Bankr. LEXIS 3448.

The Promoters argue that the orders of the Denver Court may not be challenged under the Rooker-Feldman doctrine. The Promoters misconstrue Rooker-Feldman,

which merely held that an erroneous state court judgment may not be appealed to a federal district court to overturn that judgment on constitutional grounds. The federal district courts lack the authority to consider the appeal because their jurisdiction is strictly original. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284-85, 125 S. Ct. 1517, 1521-22 (2005).

> The *Rooker- Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine …

*Id.*

Here, Promoters have introduced no testimony of wrongdoing. They base their proof of bad faith entirely upon the prior Orders of the Denver Court. This leaves the Debtor with no choice but to show this Court that the Orders were procured by falsehood and improvidently entered. The Debtor does not ask the Court to overturn the Orders of the Denver Court. The Debtor challenges the allegations of bad faith based entirely on these Orders.

The Bankruptcy Court abused its discretion by basing its determination of bad faith upon findings which mis-perceived the evidence.

## C. The Petition was Filed for Valid Bankruptcy Purposes

Lost in the allegations of exaggerated wrongdoing in the Denver Court is that the Bankruptcy Petition was filed for valid Bankruptcy Purposes.

> Our cases have accordingly focused on two inquiries that are particularly relevant to the question of good faith: (1) whether the petition serves a valid bankruptcy purpose, *e.g.*, by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage. *SGL Carbon*, 200 F.3d at 165.

*NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 119-20 (3d Cir. 2004).

The Debtor seeks to maximize the income potential of his assets and pay his creditors ratably from the income. ROA Vol. V, TR (6/29/22) 90:18, ROA Vol. V, TR (6/29/22) 110:4. The Debtor seeks to monetize the Mustapha Parcels which are finally free from the orders of the Denver Court. Incorporating the Mustapha Parcels into the Debtor's reorganization, the Debtor should have an opportunity to propose a workable plan.

The ability to preserve the Debtor's assets as a going concern and the ability to pay all of his creditors ratably from the income are proper purposes of a bankruptcy plan of reorganization. The Petition was not filed in bad faith.

## D. The Bankruptcy Court Failed to Consider Unusual Circumstances

The Debtor is a real estate and maritime investor who seeks to use his assets to

maximize his income potential for payment to his creditors. ROA Vol. V, TR (6/29/22) 90:18, ROA Vol. V, TR (6/29/22) 110:4. He seeks to incorporate the Mustapha Parcels in his reorganization and sell or develop the parcels, which are worth more than the proper amount of the claims in his estate. ROA Vol V, TR (6/29/22) 113:7. The Denver Court prevented the Debtor from accomplishing the proper administration of his investments. The Denver Court prevented any use of the Mustapha Parcels, insisting that they be forfeited to the Promoters.

The Bankruptcy Court failed to consider the unusual circumstances of this case. The Debtor was prevented from operating his business by the illegal order of the Denver Court freezing his assets. The Debtor was prevented from monetizing the Mustapha Parcels by the Court's ill-considered contempt orders. The Mustapha Parcels are worth more than $9 million which is more than the entirety of proper and valid claims in the estate.

The Answer Brief argues that the Court need not consider the unusual circumstances in determining bad faith if it finds cause under Section 1112(b)(4)(A). The authority cited by the Promoters is inapposite because the Bankruptcy Court made no findings under Section 1112(b)(4)(A) which defines "cause" as a "substantial or continuing loss to or diminution of the estate …"

Rather, Section 1112(b)(2) expressly provides that the court may not convert a

case if the court "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of the creditors and the estate …"

Once cause has been established, the burden shifts to the objecting parties to prove the case falls within the unusual circumstances exception to mandatory dismissal. *See Macco Props., Inc. v. Deeba (In re Macco Props.)*, 2011 Bankr. LEXIS 5755 (W.D.OK).

> The Bankruptcy Code does not define unusual circumstances. Nevertheless, "the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of Chapter 11 would be better served by maintaining the case as a Chapter 11 proceeding." *Id*. at 149, citing 7 COLLIER ON BANKRUPTCY ¶ 1112.04[3], p. 1112-26 (Alan N. Resnick and Henry J. Sommer, Eds., 15th Ed. Rev. 2008).

*Id.*, citing *In re Dovetail, Inc.*, 2008 Bankr. LEXIS 3866 (Bankr.N.D. Ill. 2008).

Under the protection of Chapter 11, the Debtor can accomplish the reorganization of his assets. He can exchange assets with equity for real estate assets with greater income producing potential. He can monetize the Mustapha Parcels which were worth $9 million in 2016 and may be worth more now. Thus, more assets are available to pay creditors than the Promoters allege.

The reduction of the claims of the Promoters to account for the lack of equity in

the property RCC lost and the setoff for loans made by the Debtor serve to decrease drastically the claims of the estate.

Also lost in the aggressive allegations of the Promoters are the absurdity of their claims in the estate. RCC submitted a claim based upon the Denver Court action. RCC stated no claims against the Debtor in the Denver Court and no judgment was entered in its favor, nor could it have judgment because jurisdiction of the claims of RCC is exclusively committed to the Courts of Mexico.

The Denver Court has ordered judgment in favor of PdC, Kneen and Flaherty. However, the claim for usurping the corporate opportunity of RCC belongs to RCC and not to PdC, its shareholder. It does not belong to Kneen or Flaherty who are remote owners of PdC, an owner of RCC. None of these creditors was damaged by the loss of the Mustapha Parcels because RCC had project debt of more than twice the value of its properties. RCC lost nothing from the loss of the property and its shareholders and remote owners also incurred no damage.

The potential of working the Mustapha Parcels into Debtor's Plan of Reorganization increases the assets or income available to repay the claims of the estate. The potential to decrease the overstated claims in the estate also affects the debtor's ability to propose a workable Chapter 11 Plan of Reorganization. The potential to change significantly the assets and the liabilities of the estate does constitute unusual

circumstances within the meaning of Section 1112(b)(2). *See In re Dovetail, Inc*., 2008 Bankr. LEXIS 3866 (Bankr.N.D. Ill. 2008).

In view of these unusual circumstances, the Bankruptcy Court was premature in its conclusion that the Debtor would be unable to propose a workable plan of reorganization.

## IV.   CONCLUSION

It is apparent that the Debtor cannot reorganize outside of Bankruptcy, but that the Debtor has a good chance of completing a successful reorganization within Chapter 11.

The Bankruptcy Court inferred that the Petition was filed in bad faith based upon the fraudulently-obtained orders of the state court. The Bankruptcy Court made unsupported and erroneous findings of fact concerning factors it used to determine bad faith. In basing its conclusion upon the erroneous factual findings, the Bankruptcy Court abused its discretion.

The Bankruptcy Court also did not consider the unusual circumstances of this case. The creditors filing the largest claims are not creditors of the Debtor. The claim of creditor RCC is grossly overstated and barred by res judicata. The Debtor has a right to Mexican property worth in excess of all of the properly asserted claims of the estate. With the reduction of the unsecured claims against the estate and the addition of the

Mexican property, the Debtor should have an opportunity to propose a workable Chapter 11 Plan of Reorganization.

As such, the Debtor has filed his Petition in good faith for a valid Bankruptcy purpose.

Respectfully submitted this 27th day of February 2023.

PODOLL & PODOLL, P.C.
5619 DTC Parkway, Ste. 1100
Greenwood Village, CO 80111
Tel: (303) 861-4000
Fax: (303) 861-4004


By: */s/Robert C. Podoll*
Robert C. Podoll
Atty. Reg. #8775
rob@podoll.net

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above and foregoing document was served on February 27, 2023, upon all parties entitled to notice through the Court's CM/ECF filing system.

By: *<u>/s/Robert C. Podoll</u>*